# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> *ex rel.* KEVIN G. DOUGHERTY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GUILD MORTGAGE COMPANY ) <br> ) <br> Defendant. ) | Civil Action No. 13-1913 (RBW) <br><br> <u>JURY TRIAL DEMANDED</u> |

## THIRD AMENDED COMPLAINT

1. Relator continues his prosecution of the False Claims Act ("FCA"), 31 U.S.C. § 3730, causes of action brought on behalf of the United States in Counts I and II of his Complaint and First Amended Complaint. Relator joins and incorporates by reference the factual allegations and the FCA causes of action asserted in Counts I and II of the United States' Complaint in Intervention.

2. Relator Kevin Dougherty engaged in protected activity under the False Claims Act ("FCA"), 31 U.S.C. § 3730 (h)(1), including filing this action.

3. Upon information and belief, Defendant Guild Mortgage Company retaliated against Relator by terminating his employment in violation of 31 U.S.C. § 3730 (h)(1).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1345, 31 U.S.C. § 3732(a), and 31 U.S.C. § 3730 (h)(2).

5. Guild originates and underwrites residential mortgage loans on homes in this District. Guild also submits claims for payment of Federal Housing Administration ("FHA")

insurance to the United States in this District. FHA is a component of the United States Department of Housing and Urban Development ("HUD") with headquarters in the District of Columbia. Venue in this District is proper under 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a).

## PARTIES

6. Relator was hired to be Guild's Quality Assurance ("QA") Manager in January 2010. Relator had no prior experience working in the residential mortgage field. On August 19, 2014, Defendant Guild, upon information and belief, terminated Dougherty's employment because he filed this action and made other efforts to stop Guild's False Claims Act violations.

7. Guild is a privately-owned company incorporated under the laws of California. Guild's headquarters are at 5898 Copley Drive, San Diego, California, 92111. Guild has branches and offices in over 30 states. Guild originates and underwrites residential mortgage loans for properties in forty-three states and the District of Columbia.

## FACTUAL ALLEGATIONS

8. As Guild's QA Manager, Relator's responsibilities included supervising Guild's internal audit function. Guild employed internal auditors who visited Guild branch offices and reviewed individual loan files to audit the compliance of Guild employees and systems with applicable regulations.

9. As QA Manager, Relator also initially supervised Guild's Quality Control ("QC") audit functions. In early 2013, Guild separated the two components of the QA department into internal audit and a QC department. After that time, Relator continued to supervise Guild's QC function, but no longer directly supervised Guild's internal audit function.

10. Guild employed an outside vendor to review a sample of loans every month, including randomly-selected reviews, reviews of all Early Payment Defaults, and reviews of any loans identified or referred as higher-risk or potentially fraudulent. When Relator began working for Guild in January 2010, Guild had just terminated its relationship with Adfitech, Inc. In late 2009 - early 2010, Guild contracted with a new outside vendor, Quest Advisors, to conduct Guild's monthly QC audits.

11. The QA Department received monthly QC reports from Quest Advisors with the results of the QC reviews for each loan reviewed. Relator forwarded these reports to Guild's senior management for review. Additionally, Relator summarized the results of the monthly QC reviews in reports, and circulated the monthly reports to Guild's senior management.

12. Relator learned that Guild's QC reviews from June 2006-September 2012, found at least 1,400 FHA loans with significant and moderate compliance exceptions, including over 400 early payment defaults – loans that defaulted within six months after origination. Despite what Guild knew from these monthly reviews, it did not report a single defective loan to HUD before June 2013.

13. Guild was required to report loans to HUD that presented material risk and "[f]indings of fraud or other serious violations" that are discovered during the "normal course of business and by quality control staff during reviews/audits of FHA loans." HUD Handbook 4060.1, REV-2, ch. 7-3.J, 7-4.D; HUD Handbook 4060.1, REV-2, ch. 2-23 ("Mortgagees are required to report to HUD any fraud, illegal acts, irregularities or unethical practices."). HUD required Guild to ensure that findings discovered through its quality control program were

reported to HUD within 60 days of the initial discovery. See HUD Handbook 4060.1, REV-2, ch. 7-3.J. 232. Guild's QC Manual also recognized the duty to self-report, and stated that "loans confirmed to contain false information or violation of regulations are reported to the appropriate investor, VA or HUD regional office."

14. Throughout 2013 and for part of 2014, Relator discussed defective loans, including loans that Guild was required to report to HUD within 60 days of initial discovery, with Guild's senior management at bi-monthly Audit Committee meetings. Relator repeatedly sought approval to report defective loans to HUD at these meetings, but was rarely given the authority to do so.

15. Instead, Relator was usually instructed to provide the defective loan details to Catherine Blocker, Executive Vice President of Production Operations, who then gathered additional information or paperwork in an attempt to cure the loan defects. This process frequently lasted longer than 60 days. Lisa Klika, Senior Vice President of Compliance and Quality Assurance, specifically instructed Relator not to report any defective loans to HUD, or other investors, without her or other senior management approval. Relator asked Klika if he should exceed the 60 day deadline if Blocker was still trying to cure a loan defect. Klika told Relator to never report a defective loan until all possible avenues to cure the loan had been exhausted, regardless of how long that took.

16. Because of Relator's lack of experience in the mortgage business, he relied on the opinions and established practices of Guild's senior management that Guild was not required to report these loans within 60 days of initial discovery. However, as Relator learned about

Government enforcement activities against other mortgage companies, he became increasingly concerned about Guild's failure to report defective loans to HUD and management's refusal to change Guild's faulty loan origination and underwriting practices. On December 3, 2013, Relator filed the initial complaint in this action.

17. In January 2014, Guild received a subpoena from the United States Department of Justice and the Department of Housing and Urban Development relating to the allegations in Relator's initial complaint.

18. In response to the subpoena, Lisa Klika made several comments to Relator which indicated that Guild believed the government investigators had received information from someone within the company. Klika stated that it was strange that the subpoena identified Guild's former Quality Control provider, Adfitech, and that the subpoena referred to loan file documents stored in electronic file folders as "buckets," which was an internal Guild term for the file folders.

19. In 2011, 2012, and 2013, Guild provided Relator with annual reviews at or about the time of the January anniversary of his hiring. In all three of those evaluations, Guild's performance reviews described Relator's job performance as either "exceeds expectations" or "meets expectations" in all categories.

20. In early 2014, Lisa Klika repeatedly delayed scheduling Relator's annual performance review meeting. After that delay, on April 4, 2014, Klika gave Relator his annual review for 2013. The written performance appraisal and development plan provided an evaluation of "needs improvement" in five of 19 categories in which Relator's performance previously had

been characterized as "meets expectations" or "exceeds expectations." Relator's performance had not changed in any way to justify these changes.

21. In May 2014, Guild hired a new Director of Quality Assurance, Dorothy McIntosh, to serve as Relator's supervisor. Rather than provide McIntosh with her own office, Guild placed her in Relator's office. Although Guild employees sometimes shared offices, it was unusual for a Director-level employee and manager to share an office. Between approximately May 2014 and July 2014, McIntosh took over several of Relator's job functions. In July 2014, McIntosh ordered six of Relator's team of nine employees to now report directly to her.

22. In August 2014, Relator reported several loans with serious defects to the Federal National Mortgage Association ("Fannie Mae") and HUD on the last day of the 60 day self-reporting period. Relator had followed up with Catherine Blocker several times concerning those loans and had been led to believe that the loan defects were not curable. When McIntosh learned that Relator had reported these defective loans to Fannie Mae and HUD without management approval, she became visibly upset, reprimanded him, and told him to never report defective loans without her or Lisa Klika's approval.

23. In early 2014, Relator had instructed two subordinates to perform a task relating to Guild's response to the government investigation (to preserve Guild's potential privilege, Relator's counsel have told him not to disclose the nature of the task to them). In July and August 2014, Relator learned that the task had not been performed correctly. On August 15, 2014, Lisa Klika called a meeting to ask why the task had not been performed correctly. Relator said that he would ask one of the employees who had worked on the assignment. Later, that employee stated,

in the presence of Dorothy McIntosh, that the employee may have misunderstood the assignment and committed human error.

24. On August 19, 2014, Lisa Klika met with Relator and McIntosh. Klika said that the above mistake and Relator's purported lack of responsibility had led to an erosion of confidence in his management abilities. Klika terminated Relator's job effective immediately and handed him a final paycheck. Relator was asked to leave Guild's offices immediately after retrieving his personal possessions.

25. Upon information and belief, Guild terminated Relator because he engaged in protected activity under 31 U.S.C. § 3730 (h)(1), not because of purported job performance issues.

## COUNT I
### (Retaliation in Violation of the False Claim Act)

26. Relator incorporates Paragraphs 1 through 25.

27. Relator engaged in lawful acts in furtherance of this action and made other efforts to stop Guild's violations of the False Claims Act.

28. Upon information and belief, Guild knew or suspected that Relator engaged in protected activity under 31 U.S.C. § 3730 (h)(1).

29. Upon information and belief, Guild terminated Relator's employment and took other discriminatory actions against Relator because he engaged in protected activity under 31 U.S.C. § 3730 (h)(1).

30. Guild's retaliation against Relator violated 31 U.S.C. § 3730 (h)(1).

31.   Guild's illegal retaliation has harmed Relator financially and damaged his reputation.

## PRAYER FOR RELIEF

Relator, on his own behalf, demands and prays that judgment be entered in Relator's favor against Defendant on Count I as follows:

1.   Reinstatement with the same seniority status that Relator would have had, but for Guild's unlawful termination of his employment.

2.   Two times the amount of back pay that have accrued since Guild terminated his employment, plus interest on the back pay.

3.   Compensation for special damages sustained as a result Guild's retaliation against Relator in an amount to be proven at trial, including litigation costs and reasonable attorneys' fees.

4.   Any further relief that the Court deems appropriate.

MOREOVER, Relator, on his own behalf, demands and prays that an award be made in Relator's favor with respect to Counts I and II of the United States' Complaint in Intervention as follows:

1.   A share of the recoveries of the United States in this action as provided under the False Claims Act.

2.   Reasonable expenses and attorney's fees incurred by Relator in the prosecution of this action.

3.   Any further relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Relator demands that this case be tried before a jury.

Respectfully submitted,

_____/s/_____
Christopher B. Mead
Mark London
Lance Robinson
London & Mead
1225 19th Street, NW, Suite 320
Washington, DC 20036
T: (202) 331-3334
F: (202) 785-4280
cmead@londonandmead.com
mlondon@londonandmead.com
lrobinson@londonandmead.com

*Counsel for Relator*

Dated: May 24, 2016