UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN G. DOUGHERTY,<br><br>    Plaintiff,<br><br>v.<br><br>GUILD MORTGAGE COMPANY,<br><br>    Defendant,<br><br>UNITED STATES OF AMERICA,<br><br>    Intervenor. | Case No. 16cv2909-JAH (BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Doc. No. 34) PLAINTIFF'S COMPLAINT** |

## **INTRODUCTION**

Pending before the Court is Defendant Guild Mortgage Company's ("Guild") motion to dismiss Plaintiff Kevin G. Dougherty's ("Dougherty") third amended complaint ("TAC") (Doc. No. 27) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 34. Dougherty filed a response in opposition. The motions are fully briefed. After careful review of the pleadings, Guild's motion to dismiss Dougherty's TAC is **DENIED**.

1

# BACKGROUND

The Federal Housing Administration ("FHA") is an entity within the United States Department of Housing and Urban Development ("HUD") that promotes American homeownership through insuring home loans. Doc. No. 20 at pg. 5. Authorized by the National Housing Act of 1934, the FHA agrees to protect mortgage lenders against the risk of loss caused by borrowers' default and non-payment. 12 U.S.C. § 1701. In order to underwrite FHA insured mortgages on HUD's behalf, a lender must first apply to become a Direct Endorsement Lender ("DE Lender"). Id. at pg. 13. The FHA's Direct Endorsement program ("DE program") handles these applications, and all applicants must be approved by HUD. Id. Certain DE Lenders participate in the Lender Insurance ("LI") program where DE Lenders personally endorse mortgages for FHA insurance and retain all documents. Id. at pgs. 13-14. Once a loan is endorsed by HUD or a DE Lender, the loan is insured by the FHA. Thus, if a homeowner defaults on an FHA-insured mortgage, HUD will reimburse the lender for both the outstanding balance on the loan and other costs associated with the default. Id. at pgs. 12-13. This "no-loss-guarantee" incentivizes lenders to grant loans to worthy applicants with low to moderate incomes and serves as an alternative to conventional financing. Id.

There are two ways that a DE Lender can underwrite an FHA-insured loan. One, a DE Lender can "manually underwrite" a loan, in accordance with HUD underwriting rules, and make a decision on extending credit to the borrower. Two, a DE Lender can use a HUD-approved Automated Underwriting System ("AUD"), a software system that makes credit recommendations. Id. at pg. 19. Beginning in July 2008, HUD took away the ability to make this choice and began requiring DE Lenders to electronically process eligible loan requests through an AUD. Id. at pg. 20. The AUD connects to a proprietary HUD algorithm known as Technology Open to Approved Lenders ("TOTAL"). Id. Using data that the lender puts in an AUS, the TOTAL algorithm makes a credit determination and either approves, subject to certain conditions, or refers the loan. Id. Approved loans are only eligible for FHA's insurance endorsement if the data entered into the AUS is true,

2

complete, and accurate. Id. When the TOTAL algorithm refers a loan, the loan goes back to the lender for manual underwriting. Id.

For each individual mortgage loan approved for FHA insurance, the lender must make a "loan-level" certification that the individual mortgage "complies with HUD rules and is 'eligible for HUD mortgage insurance under the DE program.'" Id. at pg. 26 (quoting Form HUD–92900–A). The certification differs depending on whether the loan was manually underwritten or the lender used an AUS. Id. For each loan that was underwritten using AUS, HUD requires the lender to certify to the "integrity of the data supplied by the lender used to determine the quality of the loan." Id. For a loan that required manual underwriting, the lender must certify that the underwriter "personally reviewed the appraisal report (if applicable), credit application, and all associated documents and has used due diligence in underwriting the mortgage." Id.

Guild is a California corporation that originates and underwrites residential mortgage loans for properties throughout the United States. Id. at pg. 9. Guild has been participating in the DE Lender program since 1984 and in the LI program since 2007. As of May 2016, HUD has paid claims totaling almost $300 million on at least 1,691 mortgages endorsed by Guild. Id. at pg. 29.

Dougherty began working for Guild as its Quality Assurance ("QA") manager in 2010. Doc. No. 27 at pg. 2. Dougherty learned that between 2006 and 2012, Guild had failed to report loans to HUD that presented material risk and "[f]indings of fraud or other serious violations" discovered during the "normal course of business and by quality control staff during reviews/audits of FHA loans." Id. at pgs. 3-4. Such reporting is required by HUD guidelines within 60 days of discovery. Id. (quoting HUD Handbook 4060.1, REV-2, ch. 7-3.J, 7-4.D; HUD Handbook 4060.1, REV-2, ch. 2-23). Dougherty brought these defective loans to the attention of senior management at a bi-monthly Audit Committee meeting and was specifically told not to report any defective loans to HUD without senior management approval. Id. at pg. 4. Dougherty became increasingly concerned about

3

Guild's failure to report defective loans to HUD and management's refusal to change Guild's faulty loan origination and underwriting practices. Id. at pgs. 4-5.

On December 3, 2013, Dougherty filed a complaint against Guild. Id. After filing this initial complaint, the Department of Justice, along with HUD and its Office of Inspector General, commenced an investigation into Guild's origination and underwriting of single family residential mortgages insured by the FHA. Doc. 40 at pg. 11. In January 2014, Guild received a subpoena from the United States Department of Justice. Doc. No. 27 at pg. 5. Lisa Klika ("Klika"), Guild's Senior Vice President of Compliance and Quality Assurance, made comments that led Dougherty to believe that Klika suspected Dougherty was responsible for the subpoena. Id. at pg. 5. Following Klika's comments, Dougherty received decreased marks on his performance review despite Dougherty's steady, unchanging performance. Id. at pgs. 5-6. On April 9, 2014, Dougherty filed a first amended complaint See Doc. No. 5.

In August 2014, Dougherty was given a project relating to Guild's response to the government investigation. Id. at pgs. 6-7. Shortly after the project was completed, Klika determined the project was done incorrectly, and another employee, McIntosh, took responsibility for the mistake. Id. A few days later, on August 19, 2014, Klika terminated Dougherty, effective immediately. Id. at pg. 7. Klika justified Dougherty's termination by asserting that the mistake in the project and Dougherty's purported lack of responsibility had led to an erosion of confidence in Dougherty's management abilities. Id. Dougherty asserts he was terminated because he engaged in protect activity under 31 U.S.C. § 3730 (h)(1) and not because his performance. Id. On September 8, 2014, Dougherty filed a second amended complaint. See Doc. No. 8.

On May 26, 2016, Dougherty filed his TAC alleging Retaliation in Violation of the FCA. Doc. No. 27 at pgs. 7-8. On November 29, 2016, Guild's motion to transfer venue (Doc. No. 32) was granted, and the case was transferred to the Southern District of California. On June 8, 2017, this Court took the pending Motion to Dismiss under submission pursuant to Civil Local Rule 7.1.d.1. See Doc. No. 89.

**LEGAL STANDARD**

I.   **Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the Guild is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the Dougherty to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), a court must assume the truth of all factual allegations and construe the factual allegations in the light most favorable to the nonmoving party. Cahil v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are "cast in the form of factual allegations." Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557). The court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court

should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## II. Federal Rules of Civil Procedure 8

Rule 8 of the Federal Rules of Civil Procedure provides that in order to state a claim for relief in a pleading it must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P 8(a)(1)&(2). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the Guild-unlawfully-harmed me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## **DISCUSSION**

Guild argues that Dougherty fails to state a plausible violation of 31 U.S.C. § 3730(h). Doc. No. 34 at pg. 12. Specifically, Guild contends Dougherty did not partake in protected activity. Id. at pgs. 13-22. Guild asserts that Dougherty has failed to allege that he either investigated or tried to prevent any false or fraudulent claims. Id. at pgs. 13-17. Guild argues that Dougherty's efforts in bringing Guild into compliance with HUD regulations are part of his duties as QA Manager and is not considered protected activity. Id. at pgs. 17-18. Guild further argues that Dougherty cannot properly allege that he had knowledge that he engaged in protected activity. Id. at pgs. 18-22. Guild contends that Dougherty "admits that his annual performance review (conducted before his alleged engagement in protected activity) reflected diminished job performance in 2013." Id. at pg. 22. Guild argues that Dougherty "further admits that mistakes were made over the course of his management of certain aspects of [Guild's] response to the Government's investigation, admittedly caused by his inability to manage employees on his team." Id.

In response, Dougherty argues that the TAC adequately alleges a claim that Guild violated 31 U.S.C. § 3730(h). Doc. No. 39 at pgs. 11-23. Dougherty contends that he participated in protected activity by investigating Guild's conduct and filing an FCA suit.

6

Id. at pgs. 12-19. Dougherty asserts that this caused Guild's submission of false statements and claims to the government. Id. Dougherty argues that Guild was aware that Dougherty engaged in protected activity. Id. at pgs. 19-22. Dougherty contends that Guild acted adversely to Dougherty's protected activity. Id. at pgs. 22-24.

The Court agrees. In reviewing a motion to dismiss under Rule 12(b)(6), a court must assume the truth of all factual allegations and construe the factual allegations in the light most favorable to the nonmoving party. Cahil, 80 F.3d at 337-38. Under 31 U.S.C. § 3730(h), Dougherty must sufficiently allege (1) that he engaged in protected activity; (2) Guild knew that Dougherty engaged in protected activity; and (3) Dougherty was retaliated against "because of" his involvement in protected activity. Doc. No. 34 at pg. 7. The Court finds that Dougherty pleads sufficient facts to satisfy these elements. Dougherty initially filed a complaint against Guild in 2013. After filing this initial complaint, the Department of Justice, along with HUD and its Office of Inspector General, commenced an investigation into Guild's origination and underwriting of single family residential mortgages insured by the FHA. Doc. 40 at pg. 11. In January 2014, Guild received a subpoena from the United States Department of Justice. Doc. No. 27 at pg. 5. Klika, Guild's Senior Vice President of Compliance and Quality Assurance, made comments that led Dougherty to believe that Klika suspected Dougherty was responsible for the subpoena. Id. at pg. 5. Following Klika's comments, Dougherty received decreased marks on his performance review despite Dougherty's steady, unchanging performance. Id. at pgs. 5-6. Dougherty alleges that he was terminated shortly thereafter despite a lack of change in his work performance. The Court finds that Dougherty engaged in protected activity when he investigated and filed a complaint against Guild, things that are outside the scope of Dougherty's day-to-day responsibility as QA Manager. Guild was put on notice of whistleblowing efforts when the Department of Justice, HUD, and the Office of Inspector General, collectively launched an investigation into Guild. See Doc. No. 40. Dougherty alleges that Guild's Senior Vice President of Compliance and QA, effectively Dougherty's supervisor, made specific comments that made Dougherty believe he was being suspected

7

for being responsible for the subpoena and subsequently received lowered work performance marks. See Doc. No. 27 at pg. 5. Dougherty was terminated from his position shortly thereafter. Given the timeline and factual allegations, the Court finds that Dougherty has sufficiently pled his complaint to allow "the court to draw the reasonable inference that the Guild is liable for the misconduct alleged" of retaliating against Dougherty. See Iqbal, 556 U.S. at 678.

## CONCLUSION

Based on the foregoing reasons, **IT IS HEREBY ORDERED** that Guild's motion to dismiss (Doc. Nos. 34) is **DENIED**.

**IT IS SO ORDERED**.

DATED: March 29, 2019

JOHN A. HOUSTON
United States District Judge