UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN G. DOUGHERTY,<br><br>    Plaintiff,<br><br>v.<br><br>GUILD MORTGAGE COMPANY,<br><br>    Defendant,<br><br>UNITED STATES OF AMERICA,<br><br>    Intervenor. | Case No. 16cv2909-JAH (BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Doc. No. 110) INTERVENOR'S AMENDED COMPLAINT** |

## **INTRODUCTION**

Pending before the Court is Defendant Guild Mortgage Company's ("Guild") motion to dismiss Intervenor United States' ("United States") first amended complaint ("FAC") (Doc. No. 107) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Doc. No. 110. The United States filed a response in opposition. The motion is fully briefed. After careful review of the pleadings, and for the reasons set forth below, Guild's motion to dismiss the United States' FAC is **DENIED**.

1

# BACKGROUND

The Federal Housing Administration ("FHA") is an entity within the United States Department of Housing and Urban Development ("HUD") that promotes American homeownership through insuring home loans. Doc. No. 20 at pg. 5. Authorized by the National Housing Act of 1934, the FHA agrees to protect mortgage lenders against the risk of loss caused by borrowers' default and non-payment. 12 U.S.C. § 1701. In order to underwrite FHA insured mortgages on HUD's behalf, a lender must first apply to become a Direct Endorsement Lender ("DE Lender"). Id. at pg. 13. The FHA's Direct Endorsement program ("DE program") handles these applications, and all applicants must be approved by HUD. Id. Certain DE Lenders participate in the Lender Insurance ("LI") program where DE Lenders personally endorse mortgages for FHA insurance and retain all documents. Id. at pgs. 13-14. Once a loan is endorsed by HUD or a DE Lender, the loan is insured by the FHA. Thus, if a homeowner defaults on an FHA-insured mortgage, HUD will reimburse the lender for both the outstanding balance on the loan and other costs associated with the default. Id. at pgs. 12-13. This "no-loss-guarantee" incentivizes lenders to grant loans to worthy applicants with low to moderate incomes and serves as an alternative to conventional financing. Id.

There are two ways that a DE Lender can underwrite an FHA-insured loan. One, a DE Lender can "manually underwrite" a loan, in accordance with HUD underwriting rules, and make a decision on extending credit to the borrower. Two, a DE Lender can use a HUD-approved Automated Underwriting System ("AUD"), a software system that makes credit recommendations. Id. at pg. 19. Beginning in July 2008, HUD took away the ability to make this choice and began requiring DE Lenders to electronically process eligible loan requests through an AUD. Id. at pg. 20. The AUD connects to a proprietary HUD algorithm known as Technology Open to Approved Lenders ("TOTAL"). Id. Using data that the lender puts in an AUS, the TOTAL algorithm makes a credit determination and either approves, subject to certain conditions, or refers the loan. Id. Approved loans are only eligible for FHA's insurance endorsement if the data entered into the AUS is true,

complete, and accurate. Id. When the TOTAL algorithm refers a loan, the loan goes back to the lender for manual underwriting. Id.

For each individual mortgage loan approved for FHA insurance, the lender must make a "loan-level" certification that the individual mortgage "complies with HUD rules and is 'eligible for HUD mortgage insurance under the DE program.'" Id. at pg. 26 (quoting Form HUD–92900–A). The certification differs depending on whether the loan was manually underwritten or the lender used an AUS. Id. For each loan that was underwritten using AUS, HUD requires the lender to certify to the "integrity of the data supplied by the lender used to determine the quality of the loan." Id. For a loan that required manual underwriting, the lender must certify that the underwriter "personally reviewed the appraisal report (if applicable), credit application, and all associated documents and has used due diligence in underwriting the mortgage." Id.

Guild is a California corporation that originates and underwrites residential mortgage loans for properties throughout the United States. Id. at pg. 9. Guild has been participating in the DE Lender program since 1984 and in the LI program since 2007. As of May 2016, HUD paid claims totaling almost $300 million on at least 1,691 mortgages endorsed by Guild. Id. at pg. 29.

Plaintiff Kevin Dougherty ("Dougherty") began working for Guild as its Quality Assurance ("QA") manager in 2010. Doc. No. 27 at pg. 2. Dougherty learned that between 2006 and 2012, Guild had failed to report loans to HUD that presented material risk and "[f]indings of fraud or other serious violations" discovered during the "normal course of business and by quality control staff during reviews/audits of FHA loans." Id. at pgs. 3-4. Such reporting is required by HUD guidelines within 60 days of discovery. Id. (quoting HUD Handbook 4060.1, REV-2, ch. 7-3.J, 7-4.D; HUD Handbook 4060.1, REV-2, ch. 2-23). Dougherty brought these defective loans to the attention of senior management at a bi-monthly Audit Committee meeting and was specifically told not to report any defective loans to HUD without senior management approval. Id. at pg. 4. Dougherty became increasingly concerned about Guild's failure to report defective loans to HUD and

3

management's refusal to change Guild's faulty loan origination and underwriting practices. Id. at pgs. 4-5.

On December 3, 2013, Dougherty filed a complaint against Guild. Id. After filing this initial complaint, the Department of Justice, along with HUD and its Office of Inspector General, commenced an investigation into Guild's origination and underwriting of single family residential mortgages insured by the FHA. Doc. 40 at pg. 11. In January 2014, Guild received a subpoena from the United States Department of Justice. Doc. No. 27 at pg. 5. Lisa Klika ("Klika"), Guild's Senior Vice President of Compliance and Quality Assurance, made comments that led Dougherty to believe that Klika suspected Dougherty was responsible for the subpoena. Id. at pg. 5. Following Klika's comments, Dougherty received decreased marks on his performance review despite Dougherty's steady, unchanging performance. Id. at pgs. 5-6. On April 9, 2014, Dougherty filed a first amended complaint See Doc. No. 5.

In August 2014, Dougherty was given a project relating to Guild's response to the government investigation. Id. at pgs. 6-7. Shortly after the project was completed, Klika determined the project was done incorrectly, and another employee, McIntosh, took responsibility for the mistake. Id. A few days later, on August 19, 2014, Klika terminated Dougherty, effective immediately. Id. at pg. 7. Klika justified Dougherty's termination by asserting that the mistake in the project and Dougherty's purported lack of responsibility had led to an erosion of confidence in Dougherty's management abilities. Id. Dougherty asserts he was terminated because he engaged in protected activity under 31 U.S.C. § 3730 (h)(1) and not because his performance. Id. On September 8, 2014, Dougherty filed a second amended complaint. See Doc. No. 8.

On May 18, 2016, the United States filed a complaint in intervention against Guild. See Doc. No. 20. On May 26, 2016, Dougherty filed his third amended complaint (TAC) alleging retaliation in violation of the FCA. Doc. No. 27 at pgs. 7-8. On November 29, 2016, Guild's motion to transfer venue (Doc. No. 32) was granted, and the case was transferred to the Southern District of California. On June 8, 2017, this Court took the

4

pending Motion to Dismiss under submission pursuant to Civil Local Rule 7.1.d.1. See Doc. No. 89. On March 4, 2019, the United States filed a first amended complaint (FAC). See Doc. No. 107. Guild filed a motion to dismiss the United States' FAC on March 22, 2019. See Doc. No. 110. On April 12, 2019 the United States filed a response in opposition to Guild's motion. See Doc. No. 113. Guild filed a reply to the United States' response on April 24, 2019. See Doc. No. 116.

## DISCUSSION

I.  **Legal Standard**

   a. **Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the Guild is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the Dougherty to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), a court must assume the truth of all factual allegations and construe the factual allegations in the light most favorable to the nonmoving party. Cahil v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are "cast in the

form of factual allegations." Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557). The court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

### b. Federal Rules of Civil Procedure 8

Rule 8 of the Federal Rules of Civil Procedure provides that in order to state a claim for relief in a pleading it must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P 8(a)(1)&(2). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the Guild-unlawfully-harmed me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### c. Federal Rules of Civil Procedure 9(b)

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud. First, the basic notice requirements of Rule 9(b) require complaints pleading fraud to "state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994); see also Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted) (stating that a plaintiff must set forth the "who, what, when, where and how" of the alleged misconduct). Second, Rule 9(b) requires that the complaint

"set forth an explanation as to why the statement or omission complained of was false or misleading." Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (citation and quotation omitted).

**II. Analysis**

The United States' FAC asserts four causes of action for violations of: (1) The False Claims Act (31 U.S.C. §3729(A)(1) (2006) and 31 U.S.C. §3729(A)(1)(A) (2010)); (2) The False Claims Act (31 U.S.C. §3729(A)(1)(B) (2010) (formerly 31 U.S.C. §3729(A)(2) (2006)); (3) breach of fiduciary duty; and (4) breach of contract. See Doc. No. 107.

**a. False Claims Act Causes of Action**

Guild argues that the United States has not properly alleged a scheme to submit false claims. Doc. No. 110-1 at pg. 12. Specifically, Guild contends that the United States "fails to provide any particulars about the scope and implementation of the scheme or identify the specific FHA requirements the scheme was designed to flout." Id. Guild asserts that the United States is only able to allege that Guild's work, in hindsight, was "imperfect," but does not establish falsity. Id. at pgs. 12-13. Guild argues that the United States' allegations "do not provide the level of detail required for Guild to be on notice of how FCA liability may attach to an individual FHA-insured loan or be able to identify the FHA loans subject to the Amended Complaint." Id. at pg. 13. Guild contends that the United States fails to reference any requirements for an actual claim for insurance proceeds made to HUD and doesn't identify any specific statements from the claim form. Id. at pgs. 16-17. Guild argues that the United States fails to properly plead the elements required to establish promissory fraud or implied false certification. Id. at pgs. 19-20. Specifically, Guild asserts that the United States needed to plead that Guild acted with a specific intent to perpetuate knowing, willful fraud. Id. at pg. 20. Guild argues that the United States fails to allege materiality because "the Government fails to allege which specific statutory, regulatory, or contractual requirements were violated." Id. at pg. 25. Guild also argues that the requirements implicated by the United States are not material "because HUD not only consistently pays claims where it knows there is or may be a violation of its

regulations, but it allows companies it knows have violated regulations to continue originating FHA-insured loans." Id. at pg. 34. Guild asserts that the United States doesn't present facts to meet the FCA's scienter element nor does the United States show that Guild acted recklessly. Id. at pg. 37. Guild argues that proving "[c]ollective knowledge, wherein the states of mind of multiple individuals is aggregated to infer corporate intent, is not sufficient." Id. at pg. 38. Guild contends that the United States does not allege that Guild was aware of any regulatory violations on any loan before certification on the loan-level application for insurance. Id.

In response, the United States argues that it has sufficiently pled Guild's violation of the FCA by pleading the "who," "what," "when," "where," and "how" necessary to state a claim for fraud. Doc. No. 113 at pgs. 16-20. The United States asserts that Guild's falsities are actionable both under an implied certification theory and promissory fraud theory. Id. at pgs. 21-28. The United States contends that "Guild being a DE lender knew, or should have known, that the certifications of compliance it made at the time of endorsement were false because the falsities were facially apparent from the loan files that it was required to underwrite in accordance with HUD's requirements. Id. at pg. 27. The United States argues that it has sufficiently pled the materiality of Guild's fraud. Id. at pg. 30. The United States contends that its amended complaint "sets forth the rationale for the requirements and how they are critically important to FHA lending." Id. at pg. 31. The United States specifically alleges that "[t]he entire scheme of FHA mortgage guaranties presupposes an honest mortgagee performing the initial credit investigation with due diligence and making the initial judgment to lend in good faith after due consideration of the facts found." Id. The United States argues that it sufficiently pled Guild's knowledge of the violation of the FHA requirements Guild certified. Id. at pg. 37. The United States contends that the complaint makes plausible allegations of Guild's scienter because the detailed allegations of Guild's knowledge and recklessness satisfy the standard. Id. at pgs. 37-38. The United States alleges that "the Complaint details Guild's practice of falsely certifying compliance with material FHA requirements and causing false claims to be

8

submitted to, and paid by, HUD when Guild's improperly-underwritten mortgages defaulted. Id. at pg. 39.

The Court finds that the United States sufficiently alleges the "who, what, where, how, and why" of Guild's misconduct. The pleadings allege with specificity how Guild "knew, or should have known, that the certifications of compliance it made at the time of endorsement were false because the falsities were facially apparent from the loan files that it was required to underwrite in accordance with HUD's requirements." Id. at pg. 27. The United States sets forth which requirements are critically important to FHA lending and demonstrates how Guild's scheme knowingly violated the requirements. Id. at pgs. 31-37. The United States also shows, through detailed allegations of Guild's knowledge and recklessness, that its Amended Complaint satisfies the scienter standard. Id. at pgs. 37-38. Thus, the Court finds that the United States' Amended Complaint demonstrates that the United States has plead with particularity sufficient to meet the 9(b) heightened standard.

### b. Breach of Fiduciary Duty

Guild argues that the United States' fiduciary claim fails because Congress has already provided guidance through extensive statutory and regulatory framework for enforcing the obligations of FHA-approved lenders. Doc. No. 110-1 at pg. 42. Guild contends that because of HUD's "administrative enforcement regime to ensure compliance with program requirements and the general presumption against federal common law, the Government must show any 'few and restricted instances' where common law is necessary in this case – which it cannot." Id.

In response, the United States asserts that Guild is incorrect in claiming that common law is unnecessary to show a breach of fiduciary duty. Doc. No. 113 at pg. 42. The United States contends that although Guild asserts that the fiduciary claim is preempted by HUD's regulatory regime, Guild does not identify any statute that would have such a preclusive effect. Id. at pgs. 42-43.

The Court finds that Guild fails to address whether the United States' allegations in its Amended Complaint state a facially plausible claim. See Iqbal, 556 U.S. at 678.

Although Guild asserts that such a breach of fiduciary duty claim is preempted, Guild does not identify a federal statute that preempts the United States' claim. The United States, in support of its assertion that federal common law recognizes a breach of fiduciary duty claim, cites to numerous federal court cases. Doc. No. 113 at pg. 42. The Court finds that the United States demonstrates that here, this is one of the "few and restricted instances" where federal common law is necessary. Thus, the Court finds that the United States has sufficiently pled its breach of fiduciary claim.

### c. Breach of Contract

Guild argues that the United States "fails to allege which contract or contracts it thinks were violated," and also "fails to identify any specific provision or how Guild breached it." Doc. No. 110-1 at pg. 43. Guild asserts that the United States' pleadings as to causation are "too vague and speculative." Id. Guild argues that the United States does not sufficiently allege that Guild caused the defaults, and based upon the pleadings, it is impossible to discern how Guild breached the FHA requirements. Id. at pgs. 42-43.

In response, the United States asserts that a claim can be false under numerous theories, including "when [a claim] is submitted on a contract induced by falsities or fraud…." Doc. No. 113 at pg. 17. The United States argues that liability for claims submitted under a contract will attach "when the contract of extension of government benefit was originally obtained through false statements or fraudulent conduct." Id. at pg. 25 (quoting United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1170 (9th Cir. 2006)).

The Court finds that the United States sufficiently pled its breach of contract claim. The United States asserts that "Guild entered into a contract with HUD for each loan that it endorsed for FHA mortgage insurance" and "[u]nder the terms of that contract, in committing FHA insurance to the loan Guild represented it complied with, and obligated it itself to comply with FHA origination, underwriting, endorsement, and other insurance requirements." Doc. No. 107 at pg. 99. The United States contends that Guild breached this contractual obligation by not complying with FHA requirements during the Lending

Time Period. Id. The United States argues that as a result of these actions, "HUD has paid insurance claims, and incurred losses, relating to hundreds of FHA-insured loans wrongfully endorsed by Guild." Id. The court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. Lee, 250 F.3d at 688-89. In viewing the totality of the facts in the light most favorable to the United States, the Court finds that Guild breached its contractual obligations and HUD suffered damages as a result of Guild's breach.

### d. Time Bar

Guild asserts that the United States' breach of fiduciary duty claims arising prior to December 3, 2010, breach of contract claims arising prior to December 3, 2007, and FCA claims arising prior to December 3, 2007 are all time-barred. Doc. No. 110-1 at pg. 44.

In response, the United States argues that its claims are timely. Doc. No. 113 at pg. 43. The United States contends that Guild has failed to meet its burden of conclusively showing that the United States' actions are "conclusively time-barred". Id. at pg. 43. The United States contends that Guild "does not identify the date that the responsible Government official(s) knew or should have known the facts material to the Government's claims." Id. at pg. 44. The United States asserts that the statute of limitations began to run when a false claim was submitted on an improperly underwritten loan, and not when Guild underwrote that loan." Id.

There is limited case law on this topic within the Ninth Circuit. In situations where the Ninth Circuit and Supreme Court have not given instruction, the Court will look to case law from other district courts. Other courts have concluded "that the statute of limitations starts to run when a case claim is submitted to the government." United States ex rel. Durkin v. County of San Diego, 2017 WL 3315784 (S.D. Cal. 2017). Following that standard, the Court finds that the United States' period began to run when the false claim was submitted and not when Guild improperly underwrote the loan. The Court finds that the United States' claims are not time-barred.

11

## CONCLUSION

Based on the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Guild's Motion to Dismiss (Doc. No. 110) is **DENIED**.

**IT IS SO ORDERED**.

DATED: September 11, 2019

JOHN A. HOUSTON
United States District Judge