UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. KEVIN G. DOUGHERTY,<br><br>Plaintiff,<br><br>v.<br><br>GUILD MORTGAGE COMPANY,<br><br>Defendant. | Case Nos.:  16cv2909-JAH(BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL**<br><br>**[ECF No. 145]** |

Currently before the Court is Defendant's May 15, 2020 Motion to Compel Discovery Responses from the Government [ECF No. 145-1 ("MTC")][1], Plaintiff-Intervenor United States of America's ("the Government's") May 29, 2020 opposition to the motion [ECF No. 146 ("Oppo.")], Defendant's June 3, 2020 reply [ECF No. 147 ("Reply")], the Government's June 10, 2020 Notice regarding Defendant's motion [ECF No. 148 ("Not.")], and Defendant's June 12, 2020 Response to the Government's Notice [ECF No. 149 ("Resp.")].  For the reasons set forth below, Defendant's motion is **GRANTED**.

///

---

[1]  Defendant's motion was initially filed on the docket as ECF No. 144.  On May 15, 2020, the same day that the initial motion was filed, Defendant filed an Amended Motion to Compel Discovery Reponses from the Government to include additional pages to its Exhibit 3.  ECF No. 145.

1

**DISCOVERY-RELATED BACKGROUND**

On November 12, 2019, the parties filed a Joint Discovery Plan [ECF No. 130] and a Proposed Stipulated Protective Order [ECF No. 130-3]. In the Joint Discovery Plan, the parties proposed that fact discovery should conclude before expert discovery begins, and the Court granted that request. Oppo. at 5; ECF No. 137 at ¶¶ 4,5; see also ECF No. 130 at ¶ 3.

On December 16, 2019, Defendant served its first set of requests for the production of documents ("RFPs") on the Government. MTC at 6; see also ECF No. 145-2, Amended Declaration of Jason W. McElroy in Support of Defendant Guild Mortgage Company's Motion to Compel Discovery Responses from the Government ("McElroy Decl.") at ¶ 2. The Government objected to Defendant's RFP No. 24 on the grounds that requiring the Government to produce documents in this action concerning information it produced in a prior action[2] with a different lender and different wrongful conduct would be irrelevant, unduly burdensome, and highly disproportionate to the needs of the case. ECF No. 146-13, United States' Responses to Guild's First Set of Requests for the Production of Documents ("US Exhibit M") at 46-48; see also Oppo. at 8-9. During a February 13, 2020 meet and confer, the Government agreed to supplement its responses with certain materials. Oppo. at 9.

On January 29, 2020, Defendant served its first set of interrogatories on the Government. MTC at 6; see also McElroy Decl. at ¶ 2. The Government objected to Defendant's interrogatories 1 and 3 on numerous grounds, including that they required a response that ran contrary to the parties' Joint Discovery Plan and this Court's Scheduling Order [ECF No. 137]. Oppo. at 6-7; see also ECF No. 146-8, United States' Responses to Guild's First Set of Interrogatories to the United States ("US Exhibit H") at 8, 14. On March 11, 2020, the parties met and conferred in person and the Government agreed to supplement its responses with additional information. McElroy Decl. at ¶ 5; see also Oppo. at 7.

---

[2]  The Government is referring to two separate cases where Quicken Loans, Inc. ("Quicken") and Wells Fargo Bank, N.A. ("Wells Fargo") took depositions of Department of Housing and Urban Development ("HUD") fact witnesses in unrelated actions that the Government brought against those lenders. Oppo. at 4.

On May 1, 2020, the parties held a telephonic meet and confer to discuss the Government's supplemental responses to interrogatories 1 and 3 and its initial responses to Defendant's RFP number 24. MTC at 7; see also ECF No. 146-11, Email Chain 5/4/2020 ("US Exhibit K") at 3-5. The parties could not come to an agreement and on May 6, 2020, counsel for the Government, Mr. Lance Alan Robinson, Mr. Brian P. Hudak, and Mr. Christopher R. B. Reimer, and counsel for Defendant, Mr. Jason M. McElroy and Mr. Timothy Patrick Ofak, jointly contacted the Court regarding a discovery dispute. ECF No. 143. In regard to the dispute, the Court issued a briefing schedule. Id. In accordance with that schedule, the parties timely filed their motion, opposition, and reply. Id.; see also MTC, Oppo., and Reply.

After Defendant filed its motion, the Government provided counsel for Quicken and Wells Fargo a copy of the motion and requested consent to produce the deposition exhibits pursuant to Defendant's RFPs. ECF No. 146-15, Declaration of Brian P. Hudak, Esq. Submitted in Opposition to Guild's Motion to Compel ("Hudak Decl.") at ¶ 7. On June 8, 2020, counsel for Quicken informed the Government that it consents to the production of HUD-produced exhibits, used as fact depositions of HUD officials in the Quicken action, to Defendant provided that the Government produce them under the "Attorneys Eyes Only" provision of the Stipulated Protective Order in this case. Not. at 2.

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b)(3). In answering interrogatories propounded to a corporation, partnership, association or governmental agency, the officer or agent responding on its behalf "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26. Soto, 162 F.R.D. at 610. Thereafter, the party opposing discovery has the burden of showing that the

discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

## DISCUSSION

Defendant seeks an order from the Court compelling the Government to provide the information requested in Defendant's interrogatories Nos. 1(f) and 3(c) as well as the exhibits related to the deposition transcripts requested in Defendant's RFP No. 24. MTC at 7; see also McElroy Decl. at ¶ 4.

**A.    Interrogatories**

    1.   Interrogatory No. 1(f)

Interrogatory No. 1(f) asks the Government to:

> Identify all claims which you purport to be false or fraudulent covered by this lawsuit, including . . . [t]he specific reason or reasons you purport the claims were false.

US Exhibit H at 8. Initially, the Government responded by broadly stating its intention to identify loans that it will use in this action as those that materially violate HUD and the Federal Housing Administration's ("FHA's") origination and underwriting requirements and resulted in claims that are false or fraudulent. Id. at 8-9. In its supplemental response, the Government identifies the universe of claims and reiterates its belief that there are materiality and underwriting violations within that universe. ECF No. 146-10, United States' First Amended Responses to Guild's First Set of Interrogatories to the United States ("US Exhibit J") at 9. The Government's response references a large set of Bates-stamped documents that either define the underwriting requirements or state the materiality criteria. Id. at 9-10. However, the Government's responses do not identify, even in general terms, the precise types of materiality and underwriting violations it is alleging. Rather, the Government suggests that Defendant should review all of its own loan files to determine the false loans in the At-Issue Claim Universe. Id. at 11.

///

### 2. Interrogatory No. 3(c)

Interrogatory No. 3(c) asks the Government to:

> Identify all contracts you purport were violated in support of your breach of contract action, including . . . [t]he provision of the contract you allege was violated.

US Exhibit H at 14. The Government initially responded by stating that "[t]he creation and terms of mortgage insurance contracts between HUD and lenders" like Defendant "are governed by statutes, regulations, and agency promulgated [sic] rules and requirements." Id. at 15. The Government continues by summarizing the rules and regulations, as well as the requirements for FHA loans. See id. at 15-17. The Government then states that Defendant "breached its mortgage insurance contracts with HUD because it originated and underwrote loans in a manner that materially violated FHA origination and underwriting requirements." Id. at 17. In its supplemental response, the Government again identified the at-issue contracts and the terms of those contracts by referencing its response to Interrogatory No. 1. US Exhibit J at 16-17. The Government cites additional sections of the Code of Federal Regulations but fails to identify precisely what Defendant did wrong. Id. at 17-18. Instead, the Government merely states that Defendant "breached its mortgage insurance contracts with HUD because it originated and underwrote the At-Issue False Loans in a manner that violated material FHA origination and underwriting requirements[.]" Id. at 19.

### 3. Discussion

Defendant argues that the information requested in "its interrogatories is relevant because it goes to the elements the Government must prove in the FCA claims and its breach of contract claims[.]" MTC at 13. Defendant notes that it cannot defend itself or "test the Government's allegations without knowing which specific statutory, regulatory, and contractual provisions are at issue[.]" Id. Furthermore, Defendant argues that the Government failed to meet its burden under Rule 33(d), asserting that it is not possible for Defendant "to ascertain the Government's contentions from thousands of pages of documents (and hundreds of program requirements) the Government has referenced." Id. at 13-14. Defendant argues that the

Government's reliance on Rule 33(d)[3] "violates Rule 11, which requires the Government to have a colorable basis for its claims[]" and indicates that the Government either "cannot identify the requirements at play because it does not know them" or that it is attempting "to gain an improper trial advantage[.]" Reply at 7-8. Additionally, Defendant contends that even though it agreed to a discovery schedule that included expert discovery after the close of fact discovery, it "did not agree to forego discovery on the most basic elements of the [G]overnment's claims, which are also key issues to Guild's defense." MTC at 16. Finally, Defendant argues that the "original qui tam complaint was filed in 2013," during which "the Government performed a statutory investigation for more than two years into its allegations." Id. Therefore, Defendant contends "the Government should at this point be able to identify the requirements it alleges Guild routinely violated." Id. at 17.

The Government responds that it has provided Defendant with all information regarding the underwriting requirements, materiality standards, and the at-issue claims universe that it currently has in its possession and that it is waiting for its own experts to "identify violations from the loan files that Guild continues to produce[.]" Oppo. at 12. Therefore, the Government contends that Defendant, "an FHA-approved lender that employs underwriters whose job it is to review loan files and determine their compliance with HUD underwriting requirements," is capable of reviewing "its own loan files under Rule 33(d) to determine which specific requirements are at issue." Id. Furthermore, the Government argues that its responses go "beyond what the Rules require in responses to contention interrogatories at this stage of the litigation." Id. at 13. In support of its position, the Government cites to Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 489 (W.D.N.C. 1998) which states that "[d]ue to the nature of contention interrogatories[4], they are more appropriately used after a substantial

---

[3]  Defendant spends 3.5 pages citing to case law throughout multiple districts in various states and asserts that "the overwhelming majority of authority from district courts around the country lines up decidedly against the Government's position here, rejecting the ploy of referring your opponent to documents and telling them to figure out your contentions." See Reply at 8-12.

[4]  The court in Capacchione stated that "[e]xamples of proper contention interrogatories

amount of discovery has been conducted—typically, at the end of the discovery period."

The Federal Rules of Civil Procedure authorize a party to respond to interrogatories by producing responsive business records and making those records available to the interrogating party under certain circumstances. See Fed. R. Civ. P. 33(d). As Rule 33(d) explains:

> [i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in enough detail to enable the interrogating party to locate and identify them as readily as the responding party could . . .

Id. An interrogatory response that references the entire document production does not specify records in sufficient detail. See Mancini v. Ins.Corp. of New York, 2009 WL 1765295, at *2 (S.D. Cal. June 18, 2009) (citation omitted). However, if the burden of deriving or ascertaining the answer will be substantially the same for either party, a response that identifies specific business records is sufficient. See Fed. R. Civ. P. 33(d); see also McKie v. Sears Prot. Co., 2011 WL 1670910, at *1 (D. Or. May 3, 2011) (stating that "'the rationale behind Rule 33(d) is to shift the burden of compiling the information and, accordingly, ascertaining the answer, from the producing party to the interrogating party. . . . Thus, where one of the parties must undertake the task of compiling the information and the records presented are not voluminous or indecipherable, the interrogating party should bear the responsibility of compiling the information.") (quoting Sadofsky v. Fiesta Prod., LLC, 252 F.R.D. 143, 148 (E.D.N.Y. 2008)); Probuilders Specialty Ins. Co. v. Valley Corp., 2012 WL 6045753, at *3 n.3 (N.D. Cal. Nov. 28,

---

include asking a party to (1) state its contentions or clarify whether it is making a contention, (2) articulate the facts underlying a contention, (3) assert a position or explain that position in relation to how the law applies to the facts, and (4) explain the legal or theoretical basis behind a contention." Capacchione, 182 F.R.D. at 489 (citing 7 Moore's Federal Practice § 33.02[2][b] (3d ed.1998)).

2012) ("[W]hen a response to an interrogatory may be derived from business records and when the burden of deriving the answer from the records is substantially the same for both sides, the production of these records sufficiently answers the interrogatory.").

For both of its responses to Defendant's interrogatories, the Government suggests that, pursuant to Rule 33(d), Defendant should look at the loan files and figure out what it did wrong. This is an improper use of Rule 33(d). If a party wishes to rely on Rule 33(d), "the burden of deriving or ascertaining the answer must be substantially the same for the party serving the interrogatory as for the party served and the party responding must specify in sufficient detail where the answers can be found." Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 650 (N.D. Cal. 2004). Merely directing Defendant to hundreds of loan records and citing to the general HUD underwriting and origination requirements does not suffice to alert Defendant to what the Government's allegations are or what evidence it has to support its claims. See, e.g., In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig. This Report Relates Only v. Ford, No. 2:18-ML-02814 AB (FFM), 2019 U.S. Dist. LEXIS 211117, at *16-17 (C.D. Cal. Oct. 17, 2019) ("Simply listing Ford's records provides not a clue to plaintiffs' contentions or what evidence supports certain claims of plaintiffs."); see also U.S. S.E.C. v. Elfindepan, S.A., 206 F.R.D. 574, 576-77 and n. 5 (M.D. N.C. 2002) ("[D]ocuments themselves rarely, if ever, reveal contentions of fact or law . . . Only plaintiff can identify its own contentions and the burden on defendants to try and divine plaintiff's contentions from documents obviously imposes a greatly unequal burden on defendants . . . [and] a mixture of contention interrogatories and requests for statements of fact . . . do not lend themselves to answer by use of Rule 33(d)."). Furthermore, given the Government's two-year statutory investigation into this matter, the burden of determining the Government's contentions or allegations is not equal and the use of Rule 33(d) is inappropriate. See Mancini, 2009 WL 1765295, at *3.

The Government also argues that it shouldn't have to answer these contention interrogatories until after fact discovery ends and expert discovery begins. This also is incorrect. Defendant's interrogatories seek to determine the factual and legal basis for the Government's allegations so that Defendant may evaluate the evidence and determine its defenses. Generally,

"interrogatories directing a plaintiff to state facts supporting contentions in his complaint are 'entirely appropriate.'" Subramani v. Wells Fargo Bank, N.A., No. 13-CV-01605-SC, 2014 WL 7206888, at *2 (N.D. Cal. Dec. 18, 2014) (quoting In re Savitt/Adler Litig., 176 F.R.D. 44, 48 (N.D.N.Y. 1997)); see also Tennison v. City & Cnty. of San Francisco, 226 F.R.D. 615, 618 (N.D. Cal. 2005) (granting motion to compel answers to interrogatories asking plaintiff to state all facts supporting a claim). Here, the Government's two-year statutory investigation should have enabled it to identify the specific allegations of wrongdoing as soon as discovery commenced. In addition, discovery in this case has been open since November 2019 so the Government has had plenty of time to gather the information necessary to provide substantive answers to Defendant's interrogatories. While the Government may not yet be able to identify the precise violation in each claim file, it must supplement its interrogatory responses by describing the precise types of underwriting, origination, or endorsement violations—or any other type of violation—allegedly committed by Defendant. As interrogatory 1(f) requests, the Government must state the "specific reason or reasons [it] purport[s] the claims were false." US Exhibit H at 8. Similarly, the Government must describe the specific types of conduct that violated the terms of the HUD and FHA contracts and which specific provisions were violated.[5] In reaching this decision, the Court notes that the Government has brought similar HUD and FHA violation allegations against other lenders and therefore is familiar with various types of false or fraudulent claims. See, e.g., United States v. Dolphin Mortg. Corp., No. 06-CV-499, 2009 WL 153190 (N.D. Ill. Jan. 22, 2009) (finding that the lender did not perform the underwriting process and falsified or knowingly accepted falsified financial information pertaining to the borrowers to make them appear eligible for HUD-insured loans); United States v. Heck, No. CIV. A. 86-0875(SSB), 1987 WL 49253, at *1 (D.N.J. Mar. 26, 1987) (finding that lenders "obtained HUD mortgage insurance through the submission of applications and supporting documentation that contained false and

---

[5] The Government is required to supplement its interrogatory responses as set forth in this order. The Government also is reminded of its ongoing obligation to supplement its interrogatory responses. See Fed. R. Civ. P. 26(e).

fraudulent information concerning, <u>inter alia</u>, their employment, income, assets and liabilities"); <u>United States v. TXL Mortg. Corp.</u>, No. CV 15-1658 (JEB), 2016 WL 5108019, at *2 (D.D.C. Sept. 20, 2016) (finding the lender "provided facially inaccurate facts or violated key FHA underwriting requirements"); <u>United States v. Americus Mortg. Corp.</u>, No. 4:12-CV-2676, 2017 WL 4083589, at *2 (S.D. Tex. Sept. 14, 2017) (finding that the Government adequately proved that the defendant skirted HUD requirements by allowing its unregistered branches to provide the FHA identification numbers of its registered branches for each loan and forged its branch managers' signatures). Accordingly, Defendant's motion to compel further response to interrogatories Nos. 1(f) and 3(c) is **GRANTED**.

### B. Request for Production No. 24

RFP No. 24 asks the Government for:

> All transcripts of depositions taken of current and former HUD employees, officials, and FRCP 30(b)(6) designees in the proceeding titled United States v. Quicken Loans, Inc., No.16-cv-14050, in the United States District Court for the Eastern District of Michigan.

ECF No. 146-12, Guild's First Set of Requests for Production of Documents to Plaintiff United States of America ("US Exhibit L") at 13. Defendant also requested[6] "document request responses," "interrogatory responses produced by HUD," "responses to requests for admission produced by HUD," and "transcripts of depositions taken of current and former HUD employees, officials, and FRCP 30(b)(6) designees" in <u>United States v. Wells Fargo Bank, N.A.</u>, No. 12-cv-7527 (S.D.N.Y. 2013). <u>Id.</u> at 10-11. In regard to RFP No. 24, the Government responded, stating that it objected to producing documents from an action that "concerned a different lender and its liability for a largely different wrongful conduct" and that doing so would be "irrelevant, unduly burdensome, and highly disproportionate to the needs of the case." US Exhibit M at 46-47. Additionally, the Government stated that Defendant should specify which categories of

---

[6] Defendant does not address this case or its requests for transcripts specifically in its motion, but the Government alerts the Court to this issue in its opposition and states that it objected to the relevant RFPs regarding the Wells Fargo matter. Oppo. at 8-9.

documents it is requesting so that the Government and Court can determine their relevance to the instant case. Id. The Government eventually produced 49 deposition transcripts without their corresponding exhibits from the Quicken matter in response to RFP No. 24. MTC at 7. Neither party clearly states whether the Government produced deposition transcripts from the Wells Fargo matter, but it appears from the Government's briefing that it produced deposition transcripts from the Wells Fargo case without exhibits[7].

Defendant argues that "[n]o reasonable reading of a request for deposition transcripts excludes exhibits incorporated therein, relied upon by the witness, and questioned about within that transcript." MTC at 17. Defendant further contends it has "offered for the Government to withhold confidential information produced by other parties," pursuant to the protective order in place in this matter, "subject to a log and Guild's ability to seek production based on it," thereby assuaging "the Government's apprehension's about confidentiality and burden." Id. at 19. Finally, Defendant argues that "the deposition transcripts produced by the Government are rendered confusing or difficult to use because Guild is unable to refer to exhibits being testified about, or to understand the topics which HUD employees had been proffered under" Rule 30(b)(6). Id. at 20.

The Government contends that it did not agree to produce exhibits to deposition transcripts and that Defendant only requested the Government to produce "transcripts." Oppo. at 16. The Government also argues that Defendant's request is a "broad blanket demand for

---

[7] The Government states that, as an initial response to Defendant's request for transcripts from the Wells Fargo matter, it sought consent from Wells Fargo's counsel to produce those documents. Hudak Decl. at ¶ 2. Wells Fargo's counsel replied that it would consent to the production of transcripts if the Government complied with the protective order obligations in the Wells Fargo matter and if the "'materials are properly marked and treated under the protective order in the Guild litigation.'" Id. at ¶ 5. At that time, the Government indicated that Defendant was not requesting the exhibits to the transcripts. Id. at ¶ 4. After Defendant filed its motion, the Government provided counsel for Wells Fargo with a copy of that motion. Id. at ¶ 7. Wells Fargo's counsel responded that he would be unable to indicate Wells Fargo's position on disclosure of the transcript exhibits without a listing of exhibits by Bates stamps, which the Government states in the Hudak Declaration it does not have and would take hours to create through manual review of the exhibits. Id.

documents it agreed it would not pursue," including documents produced by HUD pursuant to Quicken-specific custodial ESI parameters, "additional copies of documents it already has," including HUD handbooks, and "irrelevant records[]," including a Quicken-issued subpoena to secure witness attendance.  Id. at 17-18; see also Hudak Decl. at ¶¶ 8-9.  Finally, the Government argues that simply because "a document originated with HUD does not mean Quicken or Wells [Fargo] has no interest in it[]" or in protecting confidential business information, and that this Court should not void the protective orders in those respective suits. Id. at 18.

Exhibits are an integral part of a deposition and generally must be produced with the transcript.  See Intellectual Ventures I LLC v. Symantec Corp., No. CV 13-440-LPS, 2019 WL 4751536, at *4 (D. Del. Sept. 30, 2019) (stating that exhibits are "necessary to make the deposition transcripts useable and understandable").  Here, the Government has not established why each of the exhibits should not be produced as it merely provides general objections that some exhibits are irrelevant, some may contain privileged or confidential information, and some may already have been produced to Defendant in discovery[8].  See DIRECTV, Inc., 209 F.R.D. at 458 (stating that the party opposing discovery has the burden of showing that the discovery should be prohibited for reasons of privilege or irrelevance).  Because the Government does not provide specific arguments regarding each exhibit or groups of exhibits and because the Government did not produce a privilege log, Defendant was unable to address the Government's arguments and the Court is unable to rule on them.  Furthermore, the Government does not explain why the protective order in the instant case would not adequately guard privileged information contained in the Quicken or Wells Fargo exhibits.  This shortfall is more pronounced in light of Quicken's response to Defendant's motion in which Quicken consents to the production

---

[8] Specifically, the Government only provides minimal details about exhibits related to two of the 49 deposition transcripts in the Quicken matter, stating brief reasons for why it should not be required to produce each exhibit.  See Hudak Decl. at ¶¶ 8-9.  However, even these descriptions do not offer the Court enough information to enable it determine whether the exhibits should or should not be produced.

of exhibits under the "Attorneys' Eyes Only" provision of the protective order in this case. See Not. at 2.

Because exhibits are an integral part of a deposition, Defendant's motion to compel the production of the deposition exhibits is **GRANTED**. The Government must produce all exhibits incorporated in the deposition transcripts it already has produced to Defendant in this action. The Quicken documents described in the Government's Notice must be produced as "Attorneys' Eyes Only" under the protective order in this case. If the Government believes any other documents, including Wells Fargo documents, require protection, the Government may produce them pursuant to the appropriate provision of the Court's protective order.

## CONCLUSION

Defendant's motion to compel further response to interrogatories Nos. 1(f) and 3(c) and to compel response to RFP No. 24 is **GRANTED**. The Government must provide the required supplemented responses and documents by **July 21, 2020**.

**IT IS SO ORDERED**.

Dated: 6/30/2020

Hon. Barbara L. Major
United States Magistrate Judge